**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X

Claudio Rene, *individually and on behalf of others*                    Case No.: 21-cv-07435
*similarly situated*,

                                                     Hon. John G. Koeltl, U.S.D.J.

                                           *Plaintiff*,

                     *-against-*

31 East 21 Express Inc., Best Thai on 8 Corp., RTC 18
Corp., 331 Lexington Restaurant Corp. (all doing
business as Rhong-Tiam Express), Express Thai One,
Inc., Lucky Thai Express Inc., Pun San Laan Inc, Best
Thai on Gramercy Inc., Karnchanart Sae Loo, Andy
Yangeksakul a/k/a Andy Yang, Macharvadee
Premwongsiri and Thanaphan Laonutwuttikul

                                         *Defendants*.
--------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS PUN SAN**
**LAAN INC.'S AND THANAPHAN LAONUTWUTTIKUL'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**


**LEVIN-EPSTEIN & ASSOCIATES, P.C.**
Jason Mizrahi, Esq.
Joshua Levin-Epstein, Esq.
60 East 42nd Street, Suite 4700
New York, New York 10165
Tel. No.: (212) 792-0048
Email:    Jason@levinepstein.com
          Joshua@levinepstein.com
*Attorneys for Defendants Pun San*
*Laan   Inc.   and   Thanaphan*
*Laonutwuttikul*

Dated: New York, New York
      January 20, 2023

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ........................................................................... 1

RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................... 2

    A.  The Filing of the Initial Complaint ................................................. 2

    B.  Nana Thai's April 11, 2022 Document Production ..................................... 4

    C.  The June 17, 2022 Mediation ................................................. 4

    D.  Plaintiff Never Served all of the Rhong-Tiam Defendants ........................... 5

    E.  Plaintiff's July 25, 2022 Amended Complaint ..................................... 5

        i.  Plaintiff's Employment at Rhong-Tiam ..................................... 5

        ii.  The Rhong-Tiam Defendants Shuttered Their Restaurant ........................... 6

        iii.  Plaintiff's Employment at Nana Thai ..................................... 7

    F.  Nana Thai's November 2, 2022 Voluntary Supplemental Document Production ........ 8

    G.  Nana Thai's October 27, 2022 Letter Motion ..................................... 9

LEGAL STANDARD ......................................................................... 9

    I.  Legal Standard for Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6) ................. 9

    II.  Successor Liability ................................................. 10

        A.  The Common Law Test ................................................. 10

        B.  The Substantial Continuity Test ..................................... 11

ARGUMENT ......................................................................... 12

    I.  The Individual Defendant – as a Matter of Law – Cannot be Found Liable Under Either Theory of Successor Liability ..................................... 12

    II.  It is Undisputed that the Traditional Common Law Test Does not Apply ............. 13

        A.  Neither the First nor Fourth Exceptions Apply ............................... 13

    B.   Neither the Second nor Third Exceptions Apply ........................................................ 13

III.  Plaintiff Cannot Satisfy the "Substantial Continuity" Test................................................. 14

    A.   Indispensable Factor One – Notice – Is Not Satisfied ................................................. 15

        i.   The Chronology of Events Militates Against a Finding of Notice ....................... 16

        ii.  Plaintiff's Constructive Notice Argument Fails as a Matter of Law ................... 16

    B.   Indispensable Factor Two – Inability to Provide Relief – Is Not Satisfied ............... 17

        i.   The Sale of the Restaurant Militates Against a Finding of Liability ................... 18

        ii.  Plaintiffs Anticipated Arguments Also Fail........................................................ 18

        iii. Factor Three – Substantial Continuity – Is Not Satisfied ..................................... 20

    C.   Factors Four and Eight – Use of the Same Facility and Same Equipment – Are Not
         Satisfied....................................................................................................................... 20

    D.   Factor Five – Use of the Same Work Force – Is Not Satisfied................................... 21

    E.   Factor Six – Use of the Same Supervisory Personnel – Is Not Satisfied................... 22

    F.   Factor Seven – Same Jobs Under Same Conditions – Is Not Satisfied ..................... 22

    G.   Factor Nine – Same Product – Is Not Satisfied ......................................................... 23

**CONCLUSION** ........................................................................................................................... **23**

**CERTIFICATION OF COMPLIANCE**..................................................................................... **23**

## **TABLE OF AUTHORITIES**

### **Cases**

*Alvarez v. 40 Mulberry Rest., Inc.,*
   2012 WL 4639154 (S.D.N.Y. 2012)................................................................ 14

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................... 9, 10, 13, 21

*Cano v. Sushi Chain, Inc.,*
   2021 WL 8316279 (E.D.N.Y. 2021)......................................................... *passim*

*Chavis v. Chappius,*
   618 F.3d 162 (2d Cir. 2010)........................................................................ 9

*Dacas v. Duhaney,*
   2022 WL 5422709 (E.D.N.Y. 2022)......................................................... 16, 19

*Diaz v. Slayton One Cleaner Inc.*,
   2018 WL 4935831 (S.D.N.Y. 2018)......................................................... *passim*

*Feng Chen v. Patel*,
   2019 WL 2763836 (S.D.N.Y. 2019)......................................................... 11, 19

*Firstair Grp., Inc. v. Kreb,*
   127 A.D.3d 1315 (3rd Dept. 2015) ........................................................... 12

*Hamilton Equity Group, LLC v. Juan E. Irene, PLLC,*
   957 N.Y.S.2d 527 (N.Y.A.D. 4 Dept., 2012)............................................. 10, 12

*Humberto v. Molto Bene Bellmore, Inc.*,
   2022 WL 3704630 (E.D.N.Y. 2022)...................................................... 10, 18, 19

*In re O'Keefe,*
   2020 WL 9215966 (Bankr. N.D.N.Y. 2020) ............................................. 10, 12

*Marte v. Westbury Mini Mart, Inc.,*
   2017 WL 9485667 (E.D.N.Y. 2017)......................................................... *passim*

*Moreno v. Ramos*,
   2021 WL 637563 (S.D.N.Y. 2021)................................................... 10, 11, 13, 19

*Pareja v. 184 Food Corp.*,
   2021 WL 3109621 (S.D.N.Y. 2021) .............................................................. 11, 19, 21, 22

*Patino v. Brady Parking, Inc.*,
   2017 WL 5198192 (S.D.N.Y. 2017) .............................................................. 13

*Pena v. Metro. Wireless Anandpur Inc.*,
   2021 WL 5054368 (S.D.N.Y. 2021) .............................................................. 15

*Rotthoff v. New York State Cath. Health Plan, Inc.*,
   2020 WL 5763862 (E.D.N.Y. 2020) .............................................................. 11

*U.S. ex rel. Siegel v. Roche Diagnostics Corp.*,
   988 F.Supp.2d 341 (E.D.N.Y. 2013) .............................................................. 9

*Xue Ming Wang v. Abumi Sushi Inc.*,
   262 F. Supp. 3d 81, 89 (S.D.N.Y. 2017) .............................................................. *passim*

Defendants Pun San Laan Inc. (the "Corporate Defendant") and Thanaphan Laonutwuttikul (the "Individual Defendant", and together with the Corporate Defendant, the "Nana Thai Defendants", or "Nana Thai") by and through the undersigned counsel, Levin-Epstein & Associates, P.C., respectfully submit this Memorandum of Law, together with the Declaration of Jason Mizrahi, Esq., (the "Mizrahi Decl."), and the exhibits annexed thereto, in support of the Nana Thai Defendants' motion to dismiss the Amended Complaint, filed on July 25, 2022 [Dckt. No. 49] (the "Amended Complaint" or the "*Am. Compl.*") by Plaintiff Claudio Rene Calle (the "Plaintiff"), pursuant to Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 12(b)(6), and as grounds thereto respectfully state as follows:

## PRELIMINARY STATEMENT

From 2010 until April 2019 Plaintiff worked as a cook at "Rhong-Tiam Express", a Thai restaurant located at 31 East 21st Street New York, NY 10010 ("Rhong-Tiam"), five (5) to six (6) days a week, for an average of 63.5 hours per week.[1] According to the Amended Complaint, Rhong-Tiam was owned and operated by the three (3) non-appearing individual defendants.[2] Plaintiff alleges that in April 2019, (*i.e.,* after nearly a **decade**), the Rhong-Tiam Defendants[3] abandoned their restaurant, and sold certain, unspecified, equipment to the Nana Thai Defendants, who opened a **brand-new** restaurant, doing business as "Nana Thai".[4] Following the sale, Plaintiff

---

[1]  [*See Am. Compl.* at caption, and ¶ 13, 44].

[2] *To wit*: (i) Karnchanart Sae Loo; (ii) Andy Yangeksakul a/k/a Andy Yang; and (iii) Macharvadee Premwongsiri. [*Id.*].

[3] The Rhong-Tiam Defendants collectively refers to:  non-appearing defendants (i) 31 East 21 Express Inc.; (ii) Best Thai on 8 Corp.; (iii) RTC 18 Corp.; (iv) 331 Lexington Restaurant Corp.; (v) Express Thai One, Inc.; (vi) Lucky Thai Express Inc.; and (vii) Best Thai on Gramercy Inc.; (viii) Karnchanart Sae Loo; (ix) Andy Yangeksakul a/k/a Andy Yang; and (x) Macharvadee Premwongsiri.

[4] [*Am. Compl.* at ¶¶ 18-20, 45].

allegedly worked for Nana Thai on a significantly reduced basis, averaging only 33.65 hours of work each week.[5]

Rather than presenting these straight-forward allegations to the Court, Plaintiff is advancing a tortured theory of successorship liability, which impermissibly seeks sprawling relief against the Nana Thai Defendants that pre-date Plaintiff's actual employment by nearly *a decade*. Plaintiff is seeking to hold the Nana Thai Defendants hostage for hundreds-of-thousands of dollars in alleged unpaid wages[6], for work Plaintiff performed for *seven (7)*[7] other corporate defendants, and *three (3)*[8] other individuals over nearly *ten (10)* years. Plaintiff's theory of the case is doomed to fail, however, because it is premised on a disjointed, inartfully pled complaint, and ignores well-settled law on successor liability.

For the reasons set forth more fully below, Plaintiff's Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYLL") claims that pre-date his employment at Nana Thai, *i.e.,* prior to April 2019, must be dismissed.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.  The Filing of the Initial Complaint

According to the initial complaint filed on September 3, 2021 [Dckt. No. 1] (the "Complaint", or the "*Compl*."), Plaintiff worked at Rhong-Tiam, a Thai restaurant located at 31 East 21st Street New York, NY 10010, as a cook, as follows:

---

[5] [*Id*. at ¶¶ 48-50].

[6] Plaintiff's March 2, 2022 Fed.R.Civ.P. 26(a)(1) categories of damages aggregates to $390,593.93. [Mizrahi Decl. at ¶ 3] [Ex. A].

[7] *To wit*: (i) 31 East 21 Express Inc.; (ii) Best Thai on 8 Corp.; (iii) RTC 18 Corp.; (iv) 331 Lexington Restaurant Corp.; (v) Express Thai One, Inc.; (vi) Lucky Thai Express Inc.; and (vii) Best Thai on Gramercy Inc. [*See generally, Am. Compl.*].

[8] *To wit*: (i) Karnchanart Sae Loo; (ii) Andy Yangeksakul a/k/a Andy Yang; and (iii) Macharvadee Premwongsiri. [*Id*.].

| Plaintiff's Employment at Rhong-Tiam | | | |
|---|---|---|---|
| **Start** | **End** | **Avg. Hours per Week** | **"Credited" Weekly Rate** |
| 1/1/2010 | 12/31/2010 | 72 | - |
| 1/1/2011 | 12/31/2011 | 72 | - |
| 1/1/2012 | 12/31/2012 | 72 | - |
| 1/1/2013 | 12/31/2013 | 72 | - |
| 1/1/2014 | 12/31/2014 | 72 | - |
| 1/1/2015 | 12/31/2015 | 72 | $700 |
| 1/1/2016 | 12/31/2016 | 55 | $800 |
| 1/1/2017 | 12/31/2017 | 55 | $800 |
| 1/1/2018 | 12/31/2018 | 55 | $800 |
| 1/1/2019 | 4/30/2019 | 55 | $800 |

[*Compl.* at ¶¶ 45, 47-49]. Thus, Plaintiff allegedly worked at Rhong-Tiam *for nearly a decade*, five (5) to six (6) days a week, for an average of 63.5 hours per week. [*Id.*].

Plaintiff was allegedly hired by individual defendant Andy Yangeksakul a/k/a Andy Yang, who co-owned and co-operated Rhong-Tiam alongside individual defendants Karnchanart Sae Loo and Macharvadee Premwongsiri. [*Id.* at ¶¶ 28, 30-33, 36-37].

Plaintiff alleges that in April 2019, (*i.e.,* after nearly a ***decade***), Andy and his co-owners sold their restaurant, and shuttered Rhong-Tiam. [*Id.* at ¶ 1]. The Complaint alleges that the old owners (*i.e.,* the Rhong-Tiam Defendants) sold certain, unspecified equipment to defendant Pun San Laan Inc.[9] who opened a ***brand-new restaurant*** at the same location, doing business as "Nana Thai." [*Id.* at ¶ 20-23].

Following the sale, Plaintiff allegedly worked at Nana Thai on a significantly reduced basis; averaging only 33.65 hours of work each week, as follows:

---

[9] According to publicly available information, Pun San Laan Inc. was formed on around February 2019, and only started operating in April 2019. [Mizrahi Decl. at ¶ 4] [Ex. B].

| Plaintiff's Employment at Nana Thai | | | |
|---|---|---|---|
| **Start** | **End** | **Avg. Hours per Week** | **"Credited" Weekly Rate** |
| 5/1/2019 | 11/30/2019 | 55 | $800 |
| 12/1/2019 | 12/31/2019 | 41 | $750 |
| 1/1/2020 | 3/15/2020 | 41 | $750 |
| 3/16/2020 | 4/20/2020 | - | - |
| 5/1/2020 | 8/31/2020 | 33 | $500 |
| 9/1/2020 | 10/5/2020 | 39.25 | $600 |

[*Id.* at ¶ 49-51].

### B. Nana Thai's April 11, 2022 Document Production

The Corporate Defendant appeared in this action through the undersigned counsel on January 18, 2022. [Dckt. Nos. 20-21]. On April 11, 2022, the undersigned office exchanged ***hundreds*** of individual pages of business records, consisting of, *inter alia*:

1. ***Signed and dated*** time of hire notices;

2. ***Signed and dated*** weekly time records;

3. A ***signed*** biometric information privacy policy employee consent form;

4. Daily punch-in and punch-out records from the Nana Thai's biometric time keeping system;

5. ***Signed and dated*** weekly pay stubs; and

6. ***Signed and dated*** cashed and deposited checks.

[Mizrahi Decl. at ¶ 5] [Ex. C].

As set forth more fully below, the document production categorically refutes the allegations that the new owners continued any of the old owner's pre-existing payroll and timekeeping policies.

### C. The June 17, 2022 Mediation

The parties attended a virtual mediation on June 17, 2022 before mediator Rebecca Price. [Dckt. No. 38]. The mediation was unsuccessful.

### D.  Plaintiff Never Served all of the Rhong-Tiam Defendants

Plaintiff never effected service on individual defendants Andy Yangeksakul a/k/a Andy Yang or  Karnchanart Sae Loo. [*See* Dckt. Nos. 8-18, 56-59, 68-75]. On January 7, 2022, Plaintiff voluntarily discontinued the action, without prejudice, as against these individuals. [*See* Dckt. Nos. 7, 19]. As of the date of this filing (*i.e.,* in the ***year-and-a-half*** since the filing of the Complaint), Plaintiff has not sought a default against any of the remaining Rhong-Tiam Defendants.

### E.  Plaintiff's July 25, 2022 Amended Complaint

Plaintiff's Amended Complaint sought to add individual defendant Thanaphan Laonutwuttikul to the action. [*See* Dckt. Nos. 35, 41]. Of critical importance Plaintiff learned of the Individual Defendant's identity – for the first time – "from [Nana Thai's] discovery responses", made on April 11, 2022. [*See* Dckt No. 35 at ¶ 2].

#### i.     Plaintiff's Employment at Rhong-Tiam

The Amended Complaint re-alleges that Plaintiff worked as a cook at Rhong-Tiam ***for nearly a decade***, five (5) to six (6) days a week, for an average of 63.5 hours per week, as follows:

| Plaintiff's Employment at Rhong-Tiam | | | |
|---|---|---|---|
| Start | End | Avg. Hours per Week | "Credited" Weekly Rate |
| 1/1/2010 | 12/31/2010 | 72 | - |
| 1/1/2011 | 12/31/2011 | 72 | - |
| 1/1/2012 | 12/31/2012 | 72 | - |
| 1/1/2013 | 12/31/2013 | 72 | - |
| 1/1/2014 | 12/31/2014 | 72 | - |
| 1/1/2015 | 12/31/2015 | 72 | $700 |
| 1/1/2016 | 12/31/2016 | 55 | $800 |
| 1/1/2017 | 12/31/2017 | 55 | $800 |
| 1/1/2018 | 12/31/2018 | 55 | $800 |
| 1/1/2019 | 4/30/2019 | 55 | $800 |

[*Am. Compl.* at ¶¶ 1, 44, 46-48, 54-56].

Plaintiff re-alleges that he was hired in 2010 by individual defendant Andy Yangeksakul a/k/a Andy Yang, who co-owned and co-operated Rhong-Tiam alongside individual defendants Karnchanart Sae Loo and Macharvadee Premwongsiri. [*Id.* at ¶¶ 13, 31]. According to the operative Amended Complaint, Rhong-Tiam was owned and operated by the three (3) non-appearing individual defendants, and seven (7) non-appearing corporate defendants (*i.e.,* the Rhong-Tiam Defendants). [*Id.* at ¶ 13] [*see also Compl.* at ¶¶ 4-8].

### ii.    The Rhong-Tiam Defendants Shuttered Their Restaurant

The allegations in the Amended Complaint regarding his employment are sparce, disjointed and misleading. For example:

1. The Amended Complaint's caption (and the allegations of the original Complaint) correctly notes that the three (3) non-appearing individual defendants owned and operated the Thai restaurant doing business as "Rhong-Tiam" through the non-appearing corporate defendants. [*Cf. id.* at ¶ 13, *and Compl.* at ¶¶ 4-8].

2. However, the Amended Complaint also gives the misimpression that Nana Thai was operating at 31 East 21st Street New York, NY 10010 **prior to April 2019**. [*Am. Compl.* at 19].

3. The Amended Complaint also gives the misimpression that Nana Thai was co-owned by each of the individual defendants. [*Id.* at 12].

4. The Amended Complaint also gives the misimpression that non-appearing corporate defendant "Lucky Thai Express Inc." was in privity with the Nana Thai Defendants. [*Id.* at ¶¶ 14, 16, 21, 22, 24, 25, 26].

5. However, in Plaintiff's other Court filings, he concedes that "[i]n May 2019, [only the Nana Thai Defendants] purchased the restaurant where Plaintiff worked.

6. The Amended Complaint contains that unbelievable allegation that "In 2016, when Plaintiff began working [at Rhong-Tiam] 5 days a week, he earned $800 **annually**." [*Id.* at ¶ 55] (emphasis added).

The allegations regarding the sale of the restaurant are also sparce, disjointed and misleading. For example, despite the fact that Plaintiff worked at Rhong-Tiam for **nearly a decade**:

1. Plaintiff is unable to provide the first and last name of ***one single*** co-worker that allegedly continued working before and after the sale. [*Id.* at ¶ 18].

2. Plaintiff – a veteran cook – does not distinguish between the kind of food offered for sale at Rhong-Tiam, and the food offered for sale at Nana Thai. [*Id.* at ¶ 15].

3. Plaintiff does not specify exactly what equipment Nana Thai purchased from Rhong-Tiam. [*Id.* at ¶ 20].

4. Plaintiff does not specify exactly what assets or liabilities Nana Thai purchased from  Rhong-Tiam. [*Id.* at ¶ 21].

Plaintiff also alleges that: (i) in April 2019, (*i.e.,* after nearly a ***decade***), the Rhong-Tiam Defendants sold their restaurant, and shuttered Rhong-Tiam [*id*. at ¶¶ 1, 13, 44]; (ii) after the sale, the new owners opened a ***brand-new*** restaurant, doing business as Nana Thai [*id*. at ¶ 45]; and (iii) there was no continuity of ownership between Rhong-Tiam and Nana Thai [*id*. at ¶¶ 1, 13, 44, 45].

### iii.    Plaintiff's Employment at Nana Thai

Following the sale, Plaintiff allegedly worked at Nana Thai on a significantly reduced basis; averaging only 33.65 hours of work each week. [*Id.* at 48-50]. Plaintiff allegedly worked for the new owners until April 30, 2020, *i.e.,* for a total period of a-year-and-a-half, as follows:

| Plaintiff's Employment at Nana Thai | | | |
|---|---|---|---|
| **Start** | **End** | **Avg. Hours per Week** | **"Credited" Weekly Rate** |
| 5/1/2019 | 11/30/2019 | 55 | $800 |
| 12/1/2019 | 12/31/2019 | 41 | $750 |
| 1/1/2020 | 3/15/2020 | 41 | $750 |
| 3/16/2020 | 4/20/2020[10] | - | - |
| 5/1/2020 | 8/31/2020 | 33 | $500 |
| 9/1/2020 | 10/5/2020 | 39.25 | $600 |

---

[10] According to the Amended Complaint, Plaintiff did not work during this period. [*See Am. Compl.* at ¶ 45].

[*Am. Compl.* at ¶¶ 45, 48-50]. Thus, Plaintiff's overtime claims at Nana Thai are isolated to a limited span of seven (7) months. [*Id.*].

The Amended Complaint re-alleges the following causes of action[11] as against all Defendants, jointly and severally:

FIRST:      Unpaid overtime wages under the FLSA.

SECOND:     Unpaid overtime wages under the NYLL.

THIRD:      Failure to provide wage notices and wage statements under the NYLL and Wage Theft Prevention Act.

FOURTH:     Unpaid spread-of-hours under the NYLL.

[*Id.* at ¶¶ 88-104].

### F. Nana Thai's November 2, 2022 Voluntary Supplemental Document Production

On November 2, 2022, the Nana Thai Defendants voluntarily supplemented their initial document production with, *inter alia*:

1. A ***signed and dated*** surrender agreement, executed by Express One Thai Inc. as tenant, Lucky Thai Express Inc., as subtenant, and non-party United Flatiron LLC, as landlord;[12]

2. A copy of Rhong-Tiam's menu; and

3. A copy of Nana Thai's menu.

[Mizrahi Decl. at ¶ 6] [Ex. D].

As set forth more fully below, the document production categorically refutes the allegations that Nana Thai operated in substantial continuity with Rhong-Tiam.

---

[11] The Amended Complaint also alleges that the new owners discriminated against Plaintiff on the basis of his national origin and ethnicity. [*Am. Compl.* at ¶¶ 105-118].

[12] The surrender agreement was executed by non-appearing individual defendant Macharvadee Premwongsiri, on behalf of the tenant and subtenant. [*See* Mizrahi Decl. at ¶ 6] [Ex. D].

### G. Nana Thai's October 27, 2022 Letter Motion

On October 27, 2022, the Nana Thai Defendants filed a letter motion seeking leave to file the instant Motion to Dismiss. [Dckt. No. 80]. Despite being granted leave of Court, Plaintiff declined to file a second amended complaint, and decided to rest on the allegations in the Amended Complaint. [*See* Dckt. No. 84].

## LEGAL STANDARD

### I.    Legal Standard for Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id* at 678. But, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.,* 988 F.Supp.2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.,* 570 F.3d 471, 475 (2d Cir. 2009)). Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted); *see Iqbal*, 556 U.S. at 678  ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.") If well-pleaded factual allegations are present in the complaint, courts should

"assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (internal citations omitted). Factual allegations, however, "that are 'merely consistent with' a defendant's liability…'stop short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (internal citations omitted).

## II.     Successor Liability

"Under the general common law rule, '***a corporation***[13] that merely purchases for cash the assets of ***another corporation*** does not assume the seller corporation's liabilities;'" (emphasis added) however, the Supreme Court instructs courts to 'impose[ ] liability upon successors beyond the bounds of the common law rule in a number of different employment-related contexts in order to vindicate important federal statutory policies.'" *Humberto v. Molto Bene Bellmore, Inc*., 2022 WL 3704630 (E.D.N.Y. 2022) (quoting *N.Y. State Teamsters Conf. Pension & Ret. Fund v. C&S Wholesale Grocers, Inc.*, 24 F.4th 163, 176 (2d Cir. 2022)). "Federal courts sitting in New York employ either a New York common law standard or a 'substantial continuity' test in determining whether a defendant may be held liable for a previous employer's labor law violations." *Moreno v. Ramos*, 2021 WL 637563, at *3 (S.D.N.Y. 2021)   "Under either test, the party asserting successor liability has the burden of proof." *Id*.

### A.  The Common Law Test

The traditional (common law) test states that a successor may be liable for a predecessor's liabilities if:

---

[13] As set forth more fully in § I, *infra*, Courts in New York apply the doctrine where the successor in interest is a corporation, not an individual. . *In re O'Keefe*, 2020 WL 9215966, at *10 (Bankr. N.D.N.Y. 2020), *aff'd sub nom*. *Itria Ventures, LLC v. O'Keefe*, 635 B.R. 15 (N.D.N.Y. 2021). The term "business entity" in New York does not include "natural persons". *See Hamilton Equity Group, LLC v. Juan E. Irene, PLLC*, 957 N.Y.S.2d 527, 530 (N.Y.A.D. 4 Dept., 2012) (citing § NY. Bus. Corp. 901[b][7]).

(1) a successor expressly or impliedly assumed the predecessor's liabilities; (2) there was a consolidation or 'de facto merger' of predecessor and successor; (3) the successor corporation was a mere continuation of its predecessor; or (4) the transaction between successor and predecessor was entered into fraudulently to escape obligations.

*Id*.

## B. The Substantial Continuity Test

Under the substantial continuity test, the court looks to:

(1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

*Pareja v. 184 Food Corp*., 2021 WL 3109621, at *9 n.9 (S.D.N.Y. 2021) (quotation omitted). "Although no one factor" of the substantial continuity test "is determinative, courts have recognized that the first two factors, viz. notice of the claim prior to acquisition and the ability of the predecessor to provide relief, [are] 'critical.'" *Marte v. Westbury Mini Mart, Inc.,* 2017 WL 9485667, at *9 (E.D.N.Y. 2017) (quoting *Lewis v. Blackman Plumbing Supply L.L.C*., 51 F. Supp. 3d 289, 314 (S.D.N.Y. 2014)); see also *Rotthoff v. New York State Cath. Health Plan, Inc.,* 2020 WL 5763862, at *7  (E.D.N.Y. 2020) ("Of the test's nine factors, 'courts have considered the first two factors — notice and the ability of the predecessor to provide relief — to be indispensable.' " (quoting *Xue Ming Wang v. Abumi Sushi Inc*., 262 F. Supp. 3d 81, 89 (S.D.N.Y. 2017))); *Feng Chen v. Patel*, 2019 WL 2763836, at *5 (S.D.N.Y. 2019) (noting that the first "two factors are 'indispensable to the imposition of successorship liability under the "substantial continuity" test' "); *Diaz v. Slayton One Cleaner Inc.*, 2018 WL 4935831, at *6 (S.D.N.Y. 2018) (recognizing "the first two factors as more significant than the others"); *Abumi Sushi Inc*., 262 F. Supp. 3d at 89

(noting that "courts have considered the first two factors ... to be indispensable" and collecting cases). The party seeking to impose successor liability bears the burden of proof as to all factors of the substantial continuity test. *Id.* at 92. It is not defendants' burden to show that they did not have notice of a pending charge or lawsuit. *Id.*  (citation omitted).

## ARGUMENT

### I.    The Individual Defendant – as a Matter of Law – Cannot be Found Liable Under Either Theory of Successor Liability

As a threshold matter, Plaintiff cannot bind the Individual Defendant as a successor in interest to the Rhong-Tiam Defendants. Courts in New York apply the doctrine of successorship liability "where the successor in interest is a corporation, not an individual." *In re O'Keefe*, 2020 WL 9215966 at *10  ("The court is unaware of any case where, under New York law, an individual has been held to be a successor in interest to a corporate entity.") New York law excludes natural persons from the list of "other business entities" with which a corporation may merge, under a successorship liability theory. N.Y. Bus. Corp. L. §§ 901(b)(7), (c)(1); *see Hamilton Equity Grp.*, 957 N.Y.S.2d at 530  ("Thus, under New York law, neither a professional limited liability company nor a corporation is permitted by statute to merge with a 'natural person,' individual or 'sole proprietorship.''); *Firstair Grp., Inc. v. Kreb*, 127 A.D.3d 1315, 1316 (3rd Dept. 2015).

Although Plaintiff's wage-and-hour claims are plead against each Defendants, jointly and severally [*Am. Compl.* at ¶¶ 88-104], the factual allegations pertaining to successor liability [*id.* at ¶¶ 16, 18, 21, 22, 24, 31, 45] are isolated solely as to the named corporate entities. *See e.g., id.* at ¶ 25 ("…[**The Corporate Defendant**] therefore operated Nana Thai in substantial continuity with Express, Best Thai, 31 East, 8 Corp, RTC, and 331 Lexington") (emphasis added).

Consequently, Plaintiff's claims as against the Individual Defendant should be restricted to the limited period of time that he allegedly owned and managed Nana Thai.

## II.      It is Undisputed that the Traditional Common Law Test Does not Apply

Plaintiff does not attempt to plead a theory of liability based on the common law test. [*See Am. Compl.* at ¶¶ 16-25]. As reflected in Plaintiff's October 31, 2022 response to the Nana Thai Defendants' pre-motion conference letter [Dckt. No. 84 at p. 2], Plaintiff exclusively relies on the nine (9) factor substantial continuity test. Thus, it is undisputed that the traditional common law test does not apply here. Still, out of an abundance of caution, it bears mentioning that the Amended Complaint has not (and cannot) articulate a theory of successorship liability under any of the four (4)[14] enumerated exceptions of the traditional common law test.

### A.  Neither the First nor Fourth Exceptions Apply

There are no substantive allegations in the Amended Complaint vis-à-vis the Nana Thai Defendants' assumption of tort liabilities from the Rhong-Tiam Defendants. [*See generally, Am. Compl.*].[15] Nor are there any allegations of fraudulent transferals. [*Id.*]. Under these circumstances, successor liability is unavailable to Plaintiff based on either the first or fourth exceptions of the traditional common law test. *See Cano v. Sushi Chain, Inc.,* 2021 WL 8316279, at *4 (E.D.N.Y. 2021).

### B.  Neither the Second nor Third Exceptions Apply

"Courts have held that the 'de facto merger' (*i.e.,* no. 2) and 'mere continuation' (*i.e.,* no. 3, *supra*) exceptions are 'so similar that they may be considered a single exception." *Patino v. Brady Parking, Inc.*, 2017 WL 5198192, at *9 (S.D.N.Y. 2017) "When analyzing a claim that a

---

[14] *To wit*: whether (1) a successor expressly or impliedly assumed the predecessor's liabilities; (2) there was a consolidation or 'de facto merger' of predecessor and successor; (3) the successor corporation was a mere continuation of its predecessor; or (4) the transaction between successor and predecessor was entered into fraudulently to escape obligations. *Moreno*, 2021 WL 637563, at *4 (citations omitted).

[15] Paragraph 21 of the Amended Complaint alleges, in conclusory fashion, that "[u]pon information and belief, [Lucky Thai Express Inc.] and [Pun San Laan Inc] purchased the assets and liabilities of the restaurant." [*Am. Compl.* at ¶ 21]. This claim is a "mere conclusory statement" that is "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 663–64.

successor is a 'mere continuation,' [a c]ourt considers the following factors: (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets and general business operation." *Alvarez v. 40 Mulberry Rest., Inc.,* 2012 WL 4639154, at \*4 (S.D.N.Y. 2012) (quotation omitted).

Plaintiff does not allege continuity of ownership in this case. *Marte,* 2017 WL 9485667 at \*8  ("[W]here ownership actually changes hands, there can be no finding of the de facto merger (or mere continuation) exception."); *Abumi Sushi Inc.*, 262 F. Supp. 3d at 87 ("Because 'continuity of ownership is the essence of a merger,' …the exception 'cannot apply in its absence.'") (quotation omitted). Plaintiff concedes that in 2010, he was allegedly hired by individual defendant Andy Yangeksakul a/k/a Andy Yang, who co-owned and co-operated Rhong-Tiam alongside individual defendants Karnchanart Sae Loo and Macharvadee Premwongsiri. [*Am. Compl.* at ¶ 31]. "After the sale [in April 2019,]" Plaintiff alleges that "Defendant Laonutwuttikul" had hiring, firing, payroll and supervisory responsibilities." [*Id.* at ¶ 32]. Overall, Plaintiff simply alleges only that the Rhong-Tiam Defendants abandoned their restaurant, and sold their equipment to the Nana Thai Defendants, who opened ***a brand-new*** restaurant in the same location. [*Id*. at ¶¶ 16-25]. Courts in this Circuit have concluded that similar allegations are insufficient to establish successor liability under the traditional test. *Chen v. Matsu Fusion Rest. Inc*., 2022 WL 3018105, at \*3 (S.D.N.Y. 2022); *Cano,* 2021 WL 8316279, at \*7.

### III.    Plaintiff Cannot Satisfy the "Substantial Continuity" Test

As set forth more fully below, the sparce, disjointed allegations of the Amended Complaint cannot satisfy the two "critical" and "indispensable" factors of the substantial continuity test, *to*

*wit*: (1) notice of the claim prior to acquisition; (2) and the predecessor's ability to provide relief. The Amended Complaint must be dismissed on this basis alone. Assuming, *arguendo,* that Plaintiff has satisfied his threshold burden (which he has not), Plaintiff still cannot establish successor liability under the remaining factors of the substantial continuity test.

### A. Indispensable Factor One – Notice – Is Not Satisfied

The Amended Complaint does not allege that the Nana Thai Defendants had ***actual*** notice of Plaintiff's wage-theft claims against the Rhong-Tiam Defendants. See *Marte*, 2017 WL 9485667 at *9 (noting that the amended complaint was "silent with regard to notice given to the subsequent owners"). Instead, Plaintiff alleges that the Nana Thai Defendants had ***constructive*** notice of Plaintiff's wage-theft claims, as follows:

> "[Pun San Laan Inc. was] aware or should have been aware of the legal improprieties before purchasing Nana Thai Restaurant. Even a cursory review of Express, Best Thai, 31 East, 8 Corp, RTC, and 331 Lexington's payroll practices at the time of the sale would have alerted Laan that Defendants Express, Best Thai, 31 East, 8 Corp, RTC, and 331 Lexington had violated several federal and New York State wage laws. Further, Express, Best Thai, 31 East, 8 Corp, RTC, and 331 Lexington had been sued for similar FLSA and NYLL violations prior to the sale."

[*Am. Compl.* at ¶ 22].[16] As set forth herein, Plaintiff has failed to satisfy the first indispensable factor of the substantial continuity test for two (2) reasons. First, the undisputed chronology of events militates against a finding of notice. Second, Plaintiff's constructive notice argument fails as a matter of law, particularly where, as here, there were no "red flags".[17]

---

[16] Plaintiff's other conclusory allegation that Nana Thai continued Lucky Thai's unlawful practices [*Am. Compl.* at ¶ 24] "does not itself make the [successor] defendant liable for the practice before it continued the practice." *Pena v. Metro. Wireless Anandpur Inc*., 2021 WL 5054368, at *5 (S.D.N.Y. 2021).

[17] *Diaz*, 2018 WL 4935831 at *6.

### i.       The Chronology of Events Militates Against a Finding of Notice

According to publicly available information, Pun San Laan Inc. was formed on or around February 2019, and only  started operating in April 2019.[18] Yet, Plaintiff alleges that it should have been put on constructive notice of the old owners' unspecified wage-and-hour violations. [*Am. Compl.* at ¶ 22]; [*see also* Dckt. No. 84 at p. 2] ("…[the] predecessor had been sued for the same wage violations years before they made the purchase.") This is a ludicrous proposition, considering Pun San Laan Inc. was only incorporated on or around February 2019.

The chronology of when Plaintiff's claims were filed also militates against a finding of notice. The original Complaint was filed on September 3, 2021, *i.e., **nearly two-and-a-half years*** after the sale in April 2019. [*See* Dckt. No. 1]. The operative Amended Complaint was filed on July 25, 2022, *i.e., **nearly three years*** after the sale in April 2019. [*See Am. Compl.*]. The timing of the sale, and of the filing of Plaintiff's claims heavily militate against a finding of notice. *Dacas v. Duhaney*, 2022 WL 5422709, at *24 (E.D.N.Y. 2022), *report and recommendation adopted*, 2022 WL 4483188 (E.D.N.Y. 2022) ("[p]laintiff did not file this lawsuit until ten years after Rutland Realty purchased Building One. It therefore cannot be said that Rutland Realty had notice of Plaintiff's wage-and-hour claims prior to acquiring Building One.")

### ii.      Plaintiff's Constructive Notice Argument Fails as a Matter of Law

This Court, and other Courts in this Circuit, have rejected allegations seeking to impose an affirmative duty on a successor defendant to perform due diligence. *See Cano,* 2021 WL 8316279, at *9 ("while the instant action was pending at the time that the successor defendants opened their restaurant, plaintiff fails to allege any basis for their conclusory allegation that the successor defendants knew or should have known about plaintiff's lawsuit."); *Abumi Sushi Inc*., 262 F. Supp.

---

[18] [Mizrahi Decl. at ¶ 4] [Ex. B].

3d at 93 ("The Court declines to undermine the notice requirement of the substantial continuity test, and to impose such a duty in the absence of a contrary command from the Second Circuit.").

This is particularly true where, as here; (i) there was a no "turnover in in management" between the two companies; and (ii) Plaintiff points to no attributes of the sale that would have reasonably alerted the Nana Thai Defendants that a preemptive[19] investigation of Rhong-Tiam's labor practices was warranted. *Diaz*, 2018 WL 4935831 at *6   (the "complete turnover in management" between the two companies "militate[d] against imputing" the predecessor's alleged culpability to the successor) ("there is no general duty of due diligence required of the purchaser of a business, and that imputing such constructive notice is appropriate only when certain 'red flags,' such as the 'suspiciously low purchase price and uncharacteristically quick closing…should have led the defendant to inquire further into the circumstances of the transaction.'" (citations omitted).

### B.  Indispensable Factor Two – Inability to Provide Relief – Is Not Satisfied

Plaintiff has failed to allege the second "indispensable" factor of the substantial continuity test: the inability of the Rhong-Tiam Defendants to provide relief. *See Marte*, 2017 WL 9485667, at *9 (noting that the amended complaint was "silent as to the ability of the predecessor companies to provide relief"). With respect to this factor, the Amended Complaint simply alleges that:

> "Upon information and belief, Express, Best Thai, 31 East, 8 Corp, RTC, and 331 Lexington are unable to provide to Plaintiff relief for their violations of the FLSA and NYLL ."

[*Am. Compl.* at ¶ 23].

As set forth more fully below, Plaintiff has failed to satisfy the second indispensable factor of the substantial continuity test for two (2) reasons. First, the sale of the business to a prospective

---

[19] The restaurant was allegedly sold on April 2019, this action was initially filed on September 3, 2021. [*See e.g., Compl.* at ¶ 1].

purchaser militates against a finding of liability. Second, Plaintiff cannot cure his defective pleadings by pleading new facts in his opposition.

### i.    The Sale of the Restaurant Militates Against a Finding of Liability

Throughout the Amended Complaint, Plaintiff also claims that the Rhong-Tiam Defendants sold their business to the Nana Thai Defendants. [*Id.* at ¶¶ 1, 16-19, 21]. Plaintiff also claims that the Rhong-Tiam Defendants grossed annual sales over $500,000, for nearly a decade. [*Id.* at ¶ 13]. That the Rhong-Tiam Defendants received money from the sale of their business weighs against a finding that they could not provide relief to Plaintiff. *See Cano,* 2021 WL 8316279, at *9 fn.8  ("[h]ad the original defendants sold their business, they presumably would have received proceeds from the sale, which could be used to satisfy their liabilities."); *Abumi Sushi Inc*., 262 F. Supp. 3d at 95 (that defendants received money from the sale of their business weighs against a finding that they could not provide relief to plaintiff). Thus, the sale of the restaurant, when combined with Plaintiff's other allegations, militates against a finding of liability.

### ii.   Plaintiffs Anticipated Arguments Also Fail

In opposition to the Motion to Dismiss, it is anticipated that Plaintiff may argue that the Rhong-Tiam Defendants cannot provide relief because they have defaulted. [*See* Dckt. No. 84 at p. 2]. This argument fails for multiple reasons. First, Plaintiff cannot cure a defective pleading by asserting new facts for the first time in opposition of the motion. *Humberto*, 2022 WL 3704630 at *8  (declining to consider facts raised for the first time in opposition to a motion to dismiss). Second, Plaintiff never sought a default against ***any*** of the three (3) non-appearing individual defendants, or seven (7) non-appearing corporate defendants (*i.e.,* the Rhong-Tiam Defendants). Plaintiff never even bothered serving two of these individual defendants. [*See* Dckt. Nos. 8-18, 56-59, 68-75].  Even if a default judgment ***had*** been sought, and ***had*** been entered, multiple Courts in this Circuit have previously held that the mere fact of defendants' default does not satisfy second

factor of "substantial continuity" test. *Dacas*, 2022 WL 5422709 at \*24; *Humberto*, 2022 WL 3704630 at \*8; *Feng Chen*, 2019 WL 2763836, at \*5 (S.D.N.Y. 2019) ; *Moreno*, 2021 WL 637563, at \*4 n.6.

Because Plaintiff fails to allege facts that give rise to an inference: (i) that the Nana Thai Defendants had notice of the claims; or (ii) that the Rhong-Tiam Defendants are unable to provide relief, the Court need not consider whether Plaintiff has pleaded sufficient facts that there has been a substantial continuity of business operations. *See Humberto*, 2022 WL 3704630 at \*8 (dismissing complaint for plaintiff's failure to satisfy first two "indispensable" factors of the substantial continuity test); *Chen*, 2022 WL 3018105 at \*3 ("In light of Plaintiffs' failure to satisfy either of the first two 'indispensable' factors, they cannot establish successor liability under the substantial continuity test"); *Abumi Sushi Inc*., 262 F. Supp. 3d at 92 (notice and the ability of the predecessor to provide relief to the plaintiff are indispensable to the imposition of successorship liability under the substantial continuity test); *Marte*, 2017 WL 9485667 at \*9 (finding that the plaintiffs had failed to allege successor liability under substantial continuity test because they had failed to allege that the successor companies had notice of a potential claim or that the predecessor companies were unable to provide relief).

Assuming, *arguendo,* that Plaintiff has satisfied the first two (2) "indispensable" factors of (which he has not), Plaintiff still cannot establish successor liability under the remaining factors[20] of the substantial continuity test.

---

[20] *i.e., ...*(3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product. *Pareja*, 2021 WL 3109621 at \*9 n.9.

### iii.        Factor Three – Substantial Continuity – Is Not Satisfied

With regard to the third factor – whether there has been substantial community of business operations – it is undisputed that: (i) the new owners opened a ***brand-new*** restaurant, doing business as Nana Thai; and (ii) there was no continuity of ownership between Rhong-Tiam and Nana Thai.

According to the operative Amended Complaint, Rhong-Tiam was owned and operated by the three (3) non-appearing individual defendants, and seven (7) non-appearing corporate defendants (*i.e.,* the Rhong-Tiam Defendants). [*Cf. Am. Compl.* at ¶ 13, *and Compl.* at ¶¶ 4-8]. "After the sale [in April 2019,]" Plaintiff alleges that he started working at Nana Thai. Overall, Plaintiff simply alleges that the Rhong-Tiam Defendants abandoned their restaurant, and sold unspecified equipment to the Nana Thai Defendants, who opened ***a brand-new*** restaurant in the same location. [*See Am. Compl.* at ¶¶ 16-25]. Before the sale, "Defendant Andy hired Plaintiff…set his rate of pay, and set his hours. [*Id.* at ¶ 31]. "After the sale  Defendant Laonutwuttikul" was responsible for hiring, firing, payroll and supervisory responsibilities. [*Id.*at ¶ 32]. Moreover, according to publicly available information, Pun San Laan Inc. was incorporated on or around February 2019, that only started operating in April 2019.[21] Taken as a whole, these allegations fail to allege facts to plausibly find substantial continuity of business operations. *Cano,* 2021 WL 8316279, at *10.

### C. Factors Four and Eight – Use of the Same Facility and Same Equipment – Are Not Satisfied

A liberal reading of the Amended Complaint indicates that Nana Thai started operating a new business, in the same location with the same unspecified equipment. "Such continuity, standing alone, should not necessarily lead to the imposition of successor liability," as such a

---

[21] [Mizrahi Decl. at ¶ 4] [Ex. B].

finding on these factors would overexpansively impute culpability to all innocent purchasers of an ongoing business without regard to the purchaser's notice and the seller's ability to provide relief. *Diaz*, 2018 WL 4935831, at *6; *see also Cano,* 2021 WL 8316279, at *10 (denying successor liability, even where factors four and eight were in plaintiff's favor).

### D.  Factor Five – Use of the Same Work Force – Is Not Satisfied

With regard to the fifth factor – "whether [the new employer] uses the same or substantially the same work force"[22] – the Amended Complaint alleges that:

> "[u]pon the sale, Laan continues to operate Nana Thai Restaurant and retained the previous employees."

[*Am. Compl.* at ¶ 18]. This is yet another "mere conclusory statement" that is "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 663–64. First, the corporate entity referred in paragraph 18 (*i.e.,* Pun San Laan Inc.) was first formed on or around February 2019, and only started operating "Nana Thai" in April 2019.[23] Before the sale, Rhong-Tiam was owned and operated by the three (3) non-appearing individual defendants, and seven (7) non-appearing corporate defendants. [*Cf. id.* at ¶ 13, *and Compl*. at ¶¶ 4-8]. Thus, the assertion that "Laan continue[d] to operate Nana Thai Restaurant" following the sale in April 2019 is simply false.

Moreover, despite having allegedly worked at Rhong-Tiam and Nana Thai for ***nearly a decade***, Plaintiff is unable to provide the first and last name of ***one single*** co-worker that allegedly continued working before and after the sale. [*Am. Compl.* at ¶ 18].  In sum, the Amended Complaint does not plausibly allege not support a finding of the fifth factor of the substantial continuity test.

---

[22] *Pareja*, 2021 WL 3109621 at *9 n.9.
[23] [Mizrahi Decl. at ¶ 4] [Ex. B].

### E.  Factor Six – Use of the Same Supervisory Personnel – Is Not Satisfied

It is alleged that Nana Thai's principle (*i.e.,* individual defendant Thanaphan Laonutwuttikul) took over the day-to-day management of the business following the sale. [*See Am. Compl.* at ¶¶ 31, 32]. Thus, Plaintiff concedes that there was a complete turnover in the business' supervisory personnel, weighing against successor liability with respect to the sixth factor. *See Cano,* 2021 WL 8316279 at *10 ("the successor defendants…employ an entirely different staff than the original defendants, weighing factors six and seven against successor liability"); *Diaz,* 2018 WL 4935831 at *6  (the "complete turnover in management" between the two companies "militate[d] against imputing" the predecessor's alleged culpability to the successor). Moreover, Plaintiff previously admitted that he learned of the Individual Defendant's identity – for the first time – "from [Nana Thai's] discovery responses", made on April 11, 2022. [*See* Dckt No. 35 at ¶ 2]. Thus, Plaintiff does not (and cannot) plausibly allege not support a finding of the sixth factor of the substantial continuity test.

### F.  Factor Seven – Same Jobs Under Same Conditions – Is Not Satisfied

Plaintiff fails to allege *any* facts that give rise to an inference that the "the same jobs exist under substantially the same working conditions." *Pareja*, 2021 WL 3109621 at *9 n.9.  [*See generally, Am. Compl.*].

Moreover, the document productions made on April 11, 2022 and November 2, 2022 categorically refute the allegations that the new owners continued any pre-existing payroll and timekeeping policies. These documents include **hundreds** of individual pages of business records, consisting of, **inter alia**: (i) **signed and dated** time of hire notices; (ii) **signed and dated** weekly time records; (iii) a **signed** biometric information privacy policy employee consent form; (iv) punch-in and punch-out records from the Nana Thai's biometric time keeping system; (v) **signed**

*and dated* weekly pay stubs; (vi) **signed and dated** cashed and deposited checks. [Mizrahi Decl. at ¶ 5] [Ex. C]. Thus, factor seven weighs against a finding of successor liability.

### G.  Factor Nine – Same Product – Is Not Satisfied

Though never expressly stated, Plaintiff insinuates that Defendants offered the same cuisine before and after the sale, *to wit*: Thai food. [*Am. Compl.* at ¶¶ 1, 19, 20]. This is not enough to satisfy the ninth factor – producing the same product. Courts evaluating similar allegations have concluded that boilerplate culinary descriptors do not warrant a finding of successor liability. *Cano,* 2021 WL 8316279, at *10  ("After all, a sushi restaurant is a sushi restaurant. If that was all that it took to establish successor liability, substantial continuity would be somewhat meaningless.")

Regardless, on November 2, 2022, the Nana Thai Defendants voluntarily supplemented their initial document production with, *inter alia*:

1.  A copy of Rhong-Tiam's menu; and

2.  A copy of Nana Thai's menu.

[Mizrahi Decl. at ¶ 6] [Ex. D]. When viewed side-by-side**,** Nana Thai's food offerings are substantially different than Rhong-Tiam's food offerings. *To wit*: Nana Thai does not offer, *inter alia*: (i) tacos; (ii) smoothies; or (iii) juices. [*Id*.]. Notably, Rhong-Tiam's menu contains a section eponymously named after individual defendant Andy Yangeksakul a/k/a Andy Yang. [*Id*.]. Thus, factor nine weighs against a finding of successor liability.

## <u>CONCLUSION</u>

For the reasons stated above, the Court should grant the Nana Thai Defendants' Motion to Dismiss.

Dated: New York, New York
       January 20, 2023

Respectfully Submitted,

LEVIN EPSTEIN & ASSOCIATES, P.C.

*/s Jason Mizrahi*
Jason Mizrahi, Esq.
60 East 42nd Street, Suite 4700
New York, New York 10165
Tel No.: (212) 792-0048
*Attorneys for Defendants Pun San Laan*
*Inc. and Thanaphan Laonutwuttikul*

## <u>CERTIFICATION OF COMPLIANCE</u>

I certify that this memorandum of law complies with the Hon. John G. Koeltl's Individual

Motion Practice Rule II(D) because it contains exactly 7,000 words, and because it is double

spaced, in legible font, and has reasonable margins.

Dated: New York, New York
      January 20, 2023

                                      Respectfully Submitted,

                                      LEVIN EPSTEIN & ASSOCIATES, P.C.

                                      */s Jason Mizrahi*
                                      Jason Mizrahi, Esq.
                                      60 East 42nd Street, Suite 4700
                                      New York, New York 10165
                                      Tel No.: (212) 792-0048
                                      *Attorneys for Defendants Pun San Laan*
                                      *Inc. and Thanaphan Laonutwuttikul*