FISHER | TAUBENFELD LLP

225 Broadway, Suite 1700
New York, New York 10007
**Main** 212.571.0700
**Fax** 212.505.2001
www.fishertaubenfeld.com

Writer's direct dial: (212) 571-0700 ex. 102
Writer's email: michael@fishertaubenfeld.com

March 8, 2024

**VIA ECF**
Hon. Katharine H. Parker
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> Rene v. 31 East 21 Express Inc. et al.
> Case No.: 21-cv-7435 (JGK) (KHP)

Dear Judge Parker:

      We represent Plaintiff in this action. Plaintiff and Defendants Pun San Laan Inc. and Thanaphan Laonutwuttikul write to respectfully request that the Court approve their settlement as fair and reasonable under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015) and dismiss Plaintiff's claims against these Defendants only.

### I.     FACTUAL AND LEGAL BACKGROUND.

      Plaintiff began working in 2010 as a cook for Rhong-Tiam, a Thai restaurant located in Manhattan that was run by Andy Yangeksakul, a Michelin Star chef, and his partner Macharvadee Premwongsiri. During this period, the owners paid Plaintiff improperly under the FLSA and NYLL, and Plaintiff usually worked 60 to 70 hours a week for which the owners did not properly compensate him.[1] Plaintiff estimates that the old owners deprived Plaintiff of unpaid minimum wages, overtime wages, spread-of-hours wages, and liquidated damages totaling $334,311.25, plus $10,000 for violations of NYLL § 195.

      On April 1, 2019, the owners sold the restaurant to Pun San Laan Inc. and its owner Thanaphan Laonutwuttikul ("New Owners"). Although Plaintiff alleges that he continued to work extensive hours at the beginning of his employment with the New Owners, all parties agree that

---

[1] The prior owners have defaulted, and Plaintiff obtained a default judgment against them with an inquest pending once Plaintiff's claims with the New Owners are resolved. DE 170

Plaintiff's hours dropped over the course of his employment for the New Owners. Plaintiff alleges that he began working 43 hours in late 2019 and then when COVID hit in 2020 he did not usually work overtime from March 2020 until the end of his employment in October 2020. Plaintiff alleges that the New Owners paid him a daily salary that was below the NY minimum wage and did not pay him overtime pay. Plaintiff estimates that his maximum unpaid minimum wage, overtime wages, and spread-of-hours wages against the New Owners total $28,086.43 under the FLSA and NYLL.

Plaintiff also alleges that Defendant Laonutwuttikul, treated Hispanic employees such as Plaintiff less well than the Thai employees. He gave the Hispanic employees more work, gave them fewer options for the restaurant-provided meal, yelled at the Hispanic employees more, and threatened Plaintiff by telling him that he had been in a gang in Thailand and he wanted to kill him. Plaintiff alleges that these actions violated the New York City Human Rights Law.

New Owners sharply disputed all of Plaintiff's claims against them. First, New Owners claimed that had no responsibility at all for the prior owners' misconduct. In particular, they strenuously denied that they were a successor in interest under the FLSA and NYLL and filed a motion to dismiss on that ground. DE 92-94. In particular, they claimed that there was no substantial continuity between the restaurant prior and after the sale. They point to the restaurant's new name after the sale, along with changes to the menu, workforce, and management. They also assert that the New Owners had no notice of the prior owners' wage violations and that Plaintiff cannot establish that the prior owners are unable to satisfy a judgment against them. New Owners therefore strongly dispute that they bear any liability for the prior owners' violations.

New Owners also disputed that they violated the FLSA and NYLL after the sale. In discovery they produced substantial time and pay documents reflecting that Plaintiff was paid properly. Finally, New Owners dispute mistreating Plaintiff based on his ethnicity or national origin.

Plaintiff and New Owners engaged in extensive negotiations including a settlement conference before the Court and two separate mediations and ultimately, the parties reached a settlement in principle during the second mediation and finalized it in March 2024 (**Exhibit 1**). Under the Agreement, Plaintiff is to receive $30,000 over 9 months, which shall be broken down as follows: $17,834.80 to Plaintiff and $12,165.20 to Plaintiff's counsel, which is 33.3% of the settlement net of $3,248 in costs for litigating the claims against the New Owner. New Owners also agreed to sign a confession of judgment for 150% of the total should they breach and not timely cure. In exchange Plaintiff agrees to release his FLSA and NYLL claims against New Owners, as well as any other claims asserted in the case, namely Plaintiff's discrimination claims, and New Owners agree to release Plaintiff for all claims. The Agreement permits Plaintiff to proceed against the old owners. There are also no confidentiality or nondisparagement clauses in the agreement.

### 1. The Settlement is Proper Under Cheeks.

The Court should approve the settlement. In determining whether to approve a settlement, courts often look at the following factors:

2

(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Guajardo v. Titan Constr. Servs. LLC, No. 19-CV-1551 (OTW), 2020 WL 1922642, at *2 (S.D.N.Y. Apr. 21, 2020).

The settlement is reasonable under these factors. The settlement amount even after fees and costs constitutes approximately 63% of Plaintiff's best-case damages under the FLSA and NYLL during his time working for the New Owners. Given the significant risks and burdens of this litigation, that amount is justified. Notably, as explained above, Defendants have provided substantial documentation reflecting that Plaintiff worked fewer hours than he claims and was paid properly for all of those hours. Further, although Plaintiff could potentially succeed on his successor claim against the New Owners, that argument is extremely risky. New Owners have legitimate arguments regarding the alleged lack of continuity between the restaurant before and after the sale, including changes in the name, menu, workforce and management. Given all of these risks, Plaintiff benefits from receiving a large portion of his damages now without waiting potentially years to recover and taking the risk of recovering nothing at all. And, crucially, Plaintiff will proceed against the defaulting Defendants to recover for the violations prior to the sale. The settlement amount is therefore reasonable.

Further, the parties negotiated in good faith and at arms-length with the assistance of an experienced court-appointed mediator, as well as the settlement conference before the Court. The settlement allows the parties to avoid all of the risks and expenses of litigation, which in this case would be extensive given the legal and factual disputes. Finally, there is obviously no fraud or collusion involved here.

Notably, no extra factors support denying the settlement. In particular, the release is limited to wage-and-hour claims and the claims asserted in this lawsuit against the New Owners, and there is no confidentiality or nondisparagement provision.

Finally, the attorneys' fees are reasonable. Under the agreement, my firm will receive $12,165.20 in attorneys' fees and costs, which represents one-third of the settlement net of costs. The fees after costs are $8,917.40. Courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases. Guajardo, 2020 WL 1922642, at *3; Meza v. 317 Amsterdam Corp., No. 14-CV-9007 (VSB), 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015); Merino Leon v. Univ 45 Fruit & Vegetable Corp., No. 19-CV-8266 (RA), 2020 WL 1322580, at *2 (S.D.N.Y. Mar. 20, 2020); Carrion v. 381 North Ave. Auto Care Inc. et al, Case No. 19-CV-05901 (Magistrate-Judge Davison - October 29, 2019).

If the Court wishes to engage in a lodestar check, the lodestar is $24,975 (**Exhibit 2**). Of that amount, my fees are $22,950, and Ms. Howard's fees are $2,025. Plaintiff is therefore requesting a multiplier of .36.

I am requesting an hourly rate of $500. I am a partner at Fisher Taubenfeld LLP. I was admitted to the Bar of the State of New York in 2008 and since then have practiced labor and employment law, with a strong focus on wage-and-hour law. I have litigated as the primary attorney dozens of FLSA cases and have been designated class counsel in a FLSA case in this District in Gonzalez et al v. Allied Concrete Industries Inc. et al., EDNY Case No.: 2:14-cv-4771 (GRB)(SIL), where I recently won partial summary judgment in the hundreds of thousands of dollars for the class. I have also successfully won appeals in wage-and-hour matters before the Second Circuit and New York courts. Catzin v. Thank You & Good Luck Corp., 899 F.3d 77 (2d Cir. 2018); Hichez v. United Jewish Council of the E. Side, 179 A.D.3d 576, 117 N.Y.S.3d 214 (N.Y. App. Div. 2020). I am a member of the New York chapter of the National Employment Lawyers Association (NELA-NY) and have been invited to give CLEs on the FLSA. I have also been named a "Rising Star" by Super Lawyers. Another court in this Circuit recently approved $500 an hour for a named partner in a FLSA case. Canales v. Norwich Serv. Station Inc., No. 20-CV-4759(JMW), 2021 WL 5759727, at *5 (E.D.N.Y. Dec. 3, 2021).

The other attorney working on this case from my firm is Madeline Howard. Ms. Howard graduated from CUNY School of Law in summer 2022. She interned in the Labor Bureau of the New York Office of the Attorney General in 2021 and for the Member Legal Services program at AFSCME District Council 37 in 2022. She performed labor and employment-focused clinical work in the Workers' Rights clinic at CUNY Law for two semesters. Ms. Howard was recently admitted to practice in New York and just this week was admitted to practice in this Court. Courts award $150 per hour for first-year attorneys. Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015).

The hours expended are appropriate as well. I spent 45.9 hours on this case and Ms. Howard spent 13.5 hours. The work performed in this case included drafting multiple complaints, responding and drafting motions to compel and to premotion letters, taking and defending depositions, obtaining a default judgment against the nondefaulting Defendants, and attending various conferences. The fees are therefore appropriate. Accordingly, the Court should approve Plaintiff's attorneys' fees.

Costs, which total $3,248, are also appropriate. My firm expended costs for the filing fee, service of process, and depositions and interpreters. These costs are appropriate.

Thank you for your attention to the above.

Respectfully Submitted,
--------------------/s/----------------
Michael Taubenfeld

Encl.